William H. Johnson and Frances Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 4130-64.
United States Tax Court
T.C. Memo 1966-164; 1966 Tax Ct. Memo LEXIS 119; 25 T.C.M. (CCH) 858; T.C.M. (RIA) 66164; July 12, 1966
*119 1. Held: Petitioners failed to file income tax returns for the taxable years 1957, 1958, and 1959 and are therefore liable for the maximum additions to the tax under sec. 6651(a), I.R.C. 1954, for each of such taxable years. 2. Held: Petitioners are not entitled to deduct for each of the taxable years 1957, 1958, and 1959 certain unreimbursed entertainment expenses, telephone and telegraph expenses, and automobile expenses paid by petitioners during those years. Petitioners are also not entitled to deduct for the taxable year 1959 certain expenses of petitioner Frances Johnson paid or incurred while accompanying her husband, petitioner William H. Johnson, to a "National Water Works Convention". John J. Sheehy, 921 Bergen Ave., Jersey City, N.J., for the petitioner. Joel Kamens, for the respondent. SIMPSON
Memorandum Opinion SIMPSON, Judge: Respondent, in his notice of deficiency, determined deficiencies in income taxes in the amounts of $2,418.55 for 1957; $2,865.55 for 1958; and $3,154.32 for 1959. Respondent also determined that additions to the tax were due in the amounts of $51.74 for 1957; $149.39 for 1958; and $193.02 for 1959. After certain of the facts had been stipulated, *120 respondent amended the answer to claim for 1958 and 1959 increased deficiencies in the total amounts of $2,924.74 and $3,173.82, respectively, and increased additions to tax in the total amounts of $164.19 and $197.89, respectively. The primary issue in this case is whether petitioners filed income tax returns for the taxable years 1957, 1958, and 1959. If petitioners filed such returns, the general rule of section 6501 of the Internal Revenue Code of 1954[1] would prevent a redetermination of income tax for the taxable years. If petitioners did not file income tax returns for such years, the issue arises as to whether petitioners are liable for additions to the tax under section 6651(a). A further issue arises as to the deductibility of certain expenditures of petitioners during the taxable years for entertainment, telephone and telegraph, automobile expenses, and, for the taxable year 1959, travel expenses. Opinion The first issue that must be considered is whether petitioners filed income tax returns for the taxable years 1957, 1958, and 1959. Some of the facts were stipulated and those *121 facts are so found. Petitioners, William H. and Frances Johnson, are husband and wife. Since 1939, they have resided at 3900 Greystone Avenue, Bronx, New York. For convenience, "petitioner" in the singular will be used to refer to William H. Johnson. Petitioners introduced into the record of this case what were purported to be their personal, unfiled copies of joint income tax returns for the taxable years 1957, 1958, and 1959. The copy of the 1957 return was signed by both petitioners and dated May 16, 1958. The copy of the 1958 return was signed only by petitioner and dated May 22, 1959. The copy of the 1959 return was unsigned and dated April 2, 1960. Petitioners had applied for an extension of time in which to file their 1958 return, and the extension had been granted. On each of the copies, an overpayment of tax was claimed, and the overpayment was to be credited on petitioner's 1958, 1959, and 1960 estimated tax liabilities. The petitioner testified that he and his wife jointly prepared their own tax returns. For 25 years petitioner has been in the habit of posting his mail in an official United States mail box located in front of his apartment building at 3900 Greystone Avenue. *122 However, petitioner could not recall the specific acts of mailing the returns for the taxable years in question. Petitioner stated that he was relying for his knowledge that he mailed the returns on his "habit" of mailing returns from the mailbox in front of his apartment house. Petitioner testified that when he first began filing returns, the returns were mailed to the district director at Albany, New York, but at some point in time, he began to file his returns with the district director at 484 Lexington Avenue, New York City. The office then at 484 Lexington Avenue is now a part of the district director's office for Manhattan. Petitioner could not recall to which office his 1957, 1958, and 1959 returns were mailed. Respondent conducted a search for petitioner's returns for the years 1955 through 1964. The records of the district director at Albany revealed no returns on file for the petitioners for any of these years. The records of the district director at Manhattan revealed returns on file for the petitioners for the years 1955, 1961, and 1964. The 1961 return was filed in 1964. However, respondent's search for the 1964 return would have been unsuccessful without the help of petitioner. *123 The first step in locating a particular return is to find the taxpayer's "document locator number" listed under the taxpayer's name in a card file. The document locator number then enables the searcher to find the return in the storage files. Respondent was unable to locate the 1964 return through the use of petitioner's name until petitioner supplied the Manhattan office with the document locator number of the return. This inability to locate the return through the use of petitioner's name was caused by the incomplete "register" of taxpayers who had filed returns for 1964. The yearly registers of taxpayers filing returns for prior years had been completed at the time of the search. After careful consideration of the record in this case, we are not convinced that the petitioners mailed the returns to either the Albany or the 484 Lexington Avenue offices of the Internal Revenue Service for the taxable years 1957, 1958, and 1959. The petitioners may have prepared returns for those years, but there is no proof of the specific acts of mailing the returns. We recognize that it would be difficult for the petitioner, more than six years after the returns were due, to remember the specific *124 acts of mailing the returns. The fact that overpayments of tax were claimed on the purported returns gives support to his position. Petitioner is aided by a presumption that the returns were received, if it can be affirmatively found that he properly mailed them. However, petitioner could not recall mailing the returns or to whom they were mailed. Petitioner was asked at the hearing if it were possible that he could have mailed his returns to the New York State Tax Commission in Albany, and petitioner replied that, "yes, it is possible". Aligned against petitioner's testimony in regard to the mailing of the returns, we have the testimony of two officials of the Internal Revenue Service that no returns of petitioner could be located in their files for the taxable years 1957, 1958, and 1959. In addition, for the taxable years 1955 through 1964, only three returns of petitioner could be located in the Internal Revenue Service files. One of these three returns was filed approximately two years after its due date. Petitioner objected to the testimony of both witnesses for the Internal Revenue Service as to the results of the search for petitioner's income tax returns. One witness, Edward *125 F. Ford, was the chief of the taxpayer's service and accounts branch in the office of the district director at Albany. Ford testified that he had custody and control of the records of that office and authorized a search to be made for petitioner's returns. The search was to be conducted under the normal procedure of finding any return for a "Johnson at 3900 Greystone Avenue". Ford had no information as to whether the normal procedure was actually followed in this case after he ordered the search. The other witness, Edward Cimowitz, was the returns coordinator in the Manhattan office of the district director. Cimowitz testified that he had custody and control of the records of that office and personally conducted a search for petitioner's tax returns. Petitioner argues that only the persons who made the indexes for the returns in the two district directors' offices would be competent to testify, or, alternatively, only the persons who actually made the searches could testify. The basis of petitioner's argument was stated by his attorney to be the "best evidence" rule or the "hearsay" rule. As the best evidence rule applies only to the admission into evidence of written documents (see, *126 McCormick, Evidence, §§ 195-196 (1954)), we need only discuss the application of the hearsay rule. Since Cimowitz personally conducted the search for petitioner's income tax returns and then testified as to the results of that search, the only hearsay problem apparent is that he acted in reliance on records made by others not before the Court. Petitioner's objection to Ford's testimony is similarly based on the fact that Ford relied on others to conduct the search. The basis for this objection is more readily apparent than the basis for the objection to Cimowitz's testimony as a subordinate necessarily had to relate to Ford that no returns for petitioners could be found, and Ford relied on this "report" from a subordinate rather than on his personal knowledge in his testimony. Neither objection is insurmountable. Section 7453 provides that proceedings of the Tax Court shall be conducted in accordance with the rules of evidence applicable in trials without a jury in the United States District Court of the District of Columbia. Rule 44(b) of the Federal Rules of Civil Procedure, a rule of evidence applicable in that District Court, provides: (b) PROOF OF LACK OF RECORD. A written statement *127 signed by an officer having the custody of an official record or by his deputy that after diligent search no record or entry of a specified tenor is found to exist in the records of his office, accompanied by a certificate as above provided, is admissible as evidence that the records of his office contain no such record or entry. This rule sets forth an exception to the hearsay rule known as the "official statements" exception. See, 5 Wigmore, Evidence § 1630 (3rd Ed. 1940). The purpose of the official statements exception is to allow into evidence the testimony in written form of a public official in order that the public business of the official not be disrupted by the requirement of appearing personally in court. While we are not here concerned with the admissibility of an official statement, the rules regarding the admissibility of what is contained in such a statement are the same as the rules regarding the admissibility of remarks made in the course of oral testimony. Yaich v. United States, 283 F. 2d 613 (C.A. 9, 1960). And where, as in the present case, the public office is one in which the work must be apportioned among subordinates, Wigmore, in discussing the official statements *128 exception, states that: When such an officer's record or certificate is made, no one supposes that the chief officer himself has had personal knowledge of the data signed over his name. It cannot be doubted that such official statements are admissible. His duty makes him responsible for errors or defaults therein, no matter whose they are, and his duty should equally suffice to admit such statements. [§ 1635] Perhaps the two major reasons for disallowing hearsay as evidence in a trial are that such evidence is generally not as trust-worthy as direct testimony and the party against whom the hearsay evidence is directed has no opportunity to cross-examine the person who made the out-of-court statement. McCormick, Evidence, supra, § 224. These reasons are not important here. We regard the testimony of Ford and Cimowitz as trustworthy. The testimony of various subordinates in their respective departments would add little, if anything, to the reliability of their testimony. Petitioners also had an opportunity to cross-examine both Ford and Cimowitz concerning the makeup and reliability of the filing systems in their offices and the thoroughness and procedures followed in searching for petitioner's *129 returns. We find that this Court must consider the testimony of Ford and Cimowitz. The extent of their personal knowledge of the entries made in the Internal Revenue Service files and the degree of their supervision over the procedures followed in searching for petitioners' returns should go to the weight to be given to their testimony and not to its admissibility. We believe that it is highly improbable that the records of the Internal Revenue Service are so inadequate that the records of a taxpayer's returns could be misplaced three years in a row and seven out of ten years. Accordingly, we find that petitioner failed to file returns for the taxable years 1957, 1958, and 1959. Since petitioners filed no income tax returns for the years 1957, 1958, and 1959, section 6501(a), which, in general, states that a tax must be assessed within three years after the return is filed, is not applicable to the present situation. Section 6501(c)(3) provides that "in the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time". We must thus examine each of the taxable years in question to determine *130 the amount of tax due from petitioners, if any. Petitioner is a regional manager concerned with administration and sales for Rockwell Manufacturing Company, Pittsburgh, Pennsylvania. He receives a salary from Rockwell on which Federal taxes are withheld. Petitioner's expenses in connection with his position are chargeable to, or reimbursable by, Rockwell. Petitioner Frances Johnson, during the taxable years 1957, 1958, and 1959, received salaries from three employers: American Legal Publications, Irvington, New York; Standard Pharmaceutical Co., Inc., New York City; and the Atlantic District of the Lutheran Church, Missouri Synod. Federal taxes were withheld from the salaries she received. Petitioners claim deductions for unreimbursed telephone and telegraph expenses, entertainment expenses, and certain automobile expenses, such as gasoline, oil, wash, repairs, tools, and parking charges paid during the taxable years in question. Petitioners also claim a deduction for 1959 for certain expenditures of Frances Johnson in attending a convention on the west coast. The applicable statutory provisions are contained in sections 162 and 262. For the taxable years in question, section 162(a) *131 provided, in part: SEC. 162. TRADE OR BUSINESS EXPENSES (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * * [2]
Section 262 provides: SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES Except as otherwise provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. The telephone and telegraph expenses petitioner seeks to deduct amounted to $372.10 for 1957; $312.10 for 1958; and $278.10 for 1959. Petitioner testified that he could have obtained reimbursement from his employer for these expenses except that large expenses might indicate that he was relying too heavily on telephone and telegraph *132 to make business calls instead of contacting his customers personally. The rule seems clear that a taxpayer cannot deduct as a business expense those expenditures for which he could have been reimbursed by his employer. Noland v. Commissioner, 269 F. 2d 108 (C.A. 4, 1959), affirming a Memorandum Opinion of this Court, cert. denied 361 U.S. 885 (1959); William C. Stolk, 40 T.C. 345 (1963), acq. 1964-2 C.B. 7, affd. per curiam 326 F. 2d 760 (C.A. 2, 1964). The reasoning is that such expenditures are properly the business expenses of the employer, and the taxpayer cannot convert his employer's business expenses into his own merely by failing to claim repayment for them. Accordingly, petitioner must show that he could not have obtained reimbursement for these telephone and telegraph expenditures. We find that this showing is not made when the taxpayer draws the line between the expenditures for which he will claim reimbursement, and the expenditures for which he will not claim reimbursement, according to his belief as to the amount of expenditures that will project the best image of himself to his employer. Petitioner's claimed deductions for telephone and telegraph expenses for *133 the taxable years 1957, 1958, and 1959 are disallowed. Petitioner claims deductions for unreimbursed entertainment expenses in the amounts of $286.70 for 1957; $336.85 for 1958; and $312.00 for 1959. The record does not indicate whether petitioner could have been reimbursed by his employer for these expenses if he had claimed repayment for them. Petitioner received reimbursement for entertainment expenses from his employer in the amounts of $3,174.04 for 1957; $3,336.73 for 1958; and $4,150.96 for 1959. It can thus be seen that Rockwell followed a policy of reimbursing petitioner for direct entertainment expenses in furthering its business. Since petitioner was not reimbursed by his employer for the entertainment expenses in question, such expenses are prima facie personal expenses either because they were voluntarily assumed or did not arise directly out of the exigencies of the employer's business. Noland v. Commissioner, supra; William C. Stolk, supra.Petitioner is thus held to a higher standard of proof since he must overcome this prima facie nature of the expenses as well as the prima facie correctness of respondent's determination. Noland v. Commissioner, supra; William C. Stolk, supra. *134 The only evidence we have in this regard is the testimony of petitioner that his home was "always open to people, particularly on weekends, from out of town", and that these people were business associates and not personal friends. We do not find this to be sufficient proof that these expenses were business expenses. Petitioner's claimed deductions for entertainment expenses for the taxable years 1957, 1958, and 1959 are disallowed. Petitioner claims deductions for unreimbursed automobile expenses in the amounts of $679.46 for 1957; $601.50 for 1958; and $606.60 for 1959. These expenses were for gasoline, oil, car washing, repairs, tolls, and parking charges. Petitioner's employer reimbursed him for gasoline, oil, and miscellaneous automobile expenses in the amounts of $2,261.04 for 1957; $1,766.98 for 1958; and $1,676.83 for 1959. Petitioner made no offer of proof as to these expenses, and accordingly, in view of Rockwell's policy of reimbursement, such expenses must be regarded as personal expenses of the petitioner. During the course of the trial, petitioner introduced into evidence the following canceled checks for which, for the first time, he sought a deduction as a business *135 expense for the taxable year 1959: Payee
Amount
Date
Eastern Airlines
$219.02
Nov. 4, 1959
American Express Com-
pany
181.64
Nov. 4, 1959
Disneyland Hotel
74.67
Oct. 17, 1959
Yosemite Park & Curry
Co.
161.38
July 30, 1959
Hotel Roosevelt Corpora-
tion
$ 37.20
July 30, 1959
Trans World Airlines
127.05
July 13, 1959 These checks represented payments for expenditures of his wife in connection with entertainment of petitioner's business associates at a dinner or for travel to, and expenditures at, a business convention on the west coast to which she had accompanied her husband. Respondent contends that the issue of the deductibility of these expenditures has not been raised by any of the pleadings in the case and therefore cannot be properly considered by the Court. The policy of our rules on pleading is to inform the parties of the issues that they should be prepared to meet, avoiding surprise and consequent prejudice to either party. We cannot find that respondent would be prejudiced by consideration of this issue. The respondent did not object to the admission of petitioner's testimony upon the introduction into evidence of the canceled checks. There was no showing or claim that the respondent was surprised, *136 and he cross-examined the petitioner concerning this issue. After the close of the hearing, the parties submitted simultaneous briefs, and in his brief, respondent for the first time raised the objection that the petitioner had failed to plead the issue. However, his brief also anticipated petitioner's arguments on the issue and attempted to meet them. We will, therefore, consider the deductibility of the expenditures represented by the six canceled checks. It seems to us rather elementary that if a taxpayer introduces canceled checks into evidence, desiring a deduction for the payments as business expenses, he must show what was "purchased" for each payment, relating such purchase to the nature and requirements of his business. It is not enough merely to produce a check and state that the check was payment for a business expense. On direct examination, petitioner testified that the check to Eastern Airlines was for transportation to or from the west coast convention, but on cross-examination, when petitioner was asked about the Eastern Airlines check, he could only state that it was for an airlines ticket, and he did not know to or from where the ticket provided transportation. Petitioner *137 was also asked about the check to the Hotel Roosevelt Corporation, and he stated that: "I don't even know if it has a connection with the convention, but sometimes we meet in New York before going out to the airport and get together. I cannot say if that is true or not in that case, but the convention was in July, as I recall." No testimony was introduced concerning the check to the Disneyland Hotel. Petitioner did testify that his wife, while at the convention, took a trip to Yosemite Park, and, as one of the checks is to Yosemite Park & Curry Co., we can infer that this check represented a convention-related expense. Petitioner testified that the checks to American Express Company and Trans World Airlines were payments for travel and other expenses in connection with the convention. We thus do not know the purpose of three out of the six checks. No deduction can be allowed for the expenditures represented by these three checks since petitioner has failed to show that they represent expenditures for business purposes. As to the three checks representing expenditures in connection with the convention, we know the following facts: The convention was a "National Water Works Convention" *138 in San Francisco in July of 1959. All expenditures represented by the three checks were expenditures of petitioner's wife in traveling to and from, and while at, the convention. A division vice president of petitioner's employer asked petitioner to take his wife to the convention. Petitioner testified that if he had not taken his wife, he would have been "categorized as not having that much interest in the job to build it up and develop the company image". Petitioner's wife did some secretarial work for petitioner while at the convention. She also visited the company booth, met other wives for breakfast, worked with the ladies in the company "hospitality suite", toured San Francisco, and took a trip to Yosemite Park. Petitioner testified that her purpose was "promoting the sale of our products and the reputation of our company as having quality products". Petitioner was asked if he took his wife to the convention mainly for social purposes, and he answered, "in connection with Rockwell. But that is the way we sell, through gaining friendship." Section 1.162-2(c), Income Tax Regs., provides that "where a taxpayer's wife accompanies him on a business trip, expenses attributable to her *139 travel are not deductible unless it can be adequately shown that the wife's presence on the trip has a bona fide business purpose. The wife's performance of some incidental service does not cause her expenses to qualify as deductible business expenses. " Rev. Rul. 55-57, C.B. 1955-1, 315, states that, "the performance by a wife of some incidental service for her husband, such as the occasional typing of notes or similar service while accompanying him on such trips, does not establish that her presence is necessary to the conduct of his business". An analysis of the evidence relating to the purposes of petitioner's wife in attending the convention shows that she aided petitioner in the conduct of his business through social contacts with the wives of delegates to the convention, but we do not know the extent of this aid. Petitioner has given us no evidence on which we can base a finding that his wife's presence at the convention was of substantial benefit to the conduct of his business. This Court has stated that being "helpful" is not enough; a wife's functions while traveling with her husband must be "necessary" to the conduct of his business before a deduction will be allowed *140 for her expenses. L. L. Moorman, 26 T.C. 666 (1956), acq. 1956-2 C.B. 7; cf., Alabama-Georgia Syrup Co., 36 T.C. 747 (1961), acq. 1962-1 C.B. 3, rev'd sub nom. on other grounds, 311 F. 2d 640 (C.A. 5, 1962). However, petitioner has failed to supply us with any basic facts regarding the amount of time his wife aided in the conduct of his business as opposed to the amount of time she spent in personal pursuits. We do not know the extent of the secretarial work she did for her husband. We do not know how much time she spent at the company booth or what she did while there. Nor do we know whether she merely ate breakfast with other wives or acted as a hostess. We do know that she toured San Francisco and took a trip to Yosemite Park. Such appear to be the activities of one on a vacation and not the activities of one primarily on a business trip. If there was a business purpose involved in these activities, petitioner has failed to disclose it. Accordingly, no deduction can be allowed for the expenditures of petitioner's wife in traveling to and from, and while at, this convention. Since we have decided that petitioners did not file any income tax returns for the taxable years 1957, *141 1958, and 1959, and since we have decided that petitioners are not entitled to any deductions for those years for unreimbursed telephone and telegraph expenses, entertainment expenses, certain automobile expenses, and for the year 1959, traveling expenses, it is apparent that petitioners will owe some tax above that which was withheld by their employers during the taxable years. We must therefore consider the respondent's imposition of additions to the tax under section 6651(a). Section 6651(a) provides that in the case of failure to file a return on the date prescribed therefor, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than one month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. There is, as the statute provides, only one defense to the assertion of the additions for failure to file a return within the prescribed time. The taxpayer must show that his failure is due to reasonable *142 cause and not to willful neglect. Since we have found that even if petitioners prepared their returns, they failed to file them, the best reason that we can ascribe to petitioners for such failure is inadvertence or oversight. This is not sufficient to constitute reasonable cause. West Virginia Steel Corporation, 34 T.C. 851 (1960); Calvert Iron Works, Inc., 26 T.C. 770 (1956). Respondent imposed the maximum additions to the tax of 25 percent. Petitioner's only argument with regard to the impositions is that petitioners filed returns for the years in question. Petitioner does not dispute the computation of the additions, and we find that respondent has computed the additions correctly. Accordingly, Decision will be entered under Rule 50. *
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. The parenthetical phrase was amended, effective for taxable years ending after December 31, 1962, but only in respect of periods after that date, to read "(including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances)".↩
*. By official order of the Tax Court dated 7/21/66 and signed by Judge Simpson↩, the sentence "Decision will be entered under Rule 50" was substituted for the sentence "Decision will be entered for the respondent."